**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WALDEMAR MACUTKIEWICZ,<br><br>*Plaintiff*,<br><br>v.<br><br>MARCO A. RUBIO, *Secretary of State*, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-00522 (AHA) |

**Memorandum Opinion**

Waldemar Macutkiewicz sues his former employer, the State Department, as well as the Secretary of State and other Department employees, asserting they unlawfully suppressed speech, discriminated against him based on his sex, violated his due process rights, and retaliated against him. The defendants move to dismiss all claims, and the court grants that motion.

## I. Background[1]

Macutkiewicz worked as a special agent for the State Department's Bureau of Diplomatic Security for nearly twenty years, until September 2025. ECF No. 35 ¶ 18. During that time, he volunteered for and successfully completed high threat assignments in Iraq, Afghanistan, and Pakistan, and he received numerous performance awards and recognitions. *Id.* ¶ 19. While Macutkiewicz was on a high threat assignment in Afghanistan, his supervisor nominated him for the 2020 Meritorious Service Increase ("MSI") performance award. *Id.* ¶¶ 20, 22–23. According

[1] As required at this stage, the court accepts the complaint's well-pled allegations as true and draws all reasonable inferences in Macutkiewicz's favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). Because Macutkiewicz has no lawyer, the court "liberally construe[s]" his complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

to the complaint, that award generally leads to a salary increase and promotion, and it would have here. *Id.* ¶¶ 21, 28.

When Macutkiewicz's supervisor nominated him, the State Department had a policy that MSI recognition be "based solely on performance and/or service during the specified period." ECF No. 36-1 at 3; *see id.* at 4–5 (listing criteria for considering MSI nominations). The policy included a requirement that MSI nominations avoid including the nominee's name or gender to allow anonymous, merit-based review:

> Equality of Consideration
>
> All employees will be compared and judged solely on merit with absolute fairness and justice. In particular, no employee will be discriminated against, directly or indirectly, for reasons of race, color, religion, sex (including pregnancy and gender identity), national origin, disability, age, sexual orientation, genetic information, retaliation, or means of entry into the [Foreign] Service. MSI Nominations will be name-free and written in gender-neutral language.

*Id.* at 2; *see* ECF No. 35 ¶ 20. The policy reiterated the anonymity requirement, saying that nomination forms may include the "Employee ID Number, but NOT the employee's name" and must be "free of gendered pronouns." ECF No. 36-1 at 6. The policy also acknowledged the possibility that reviewers "may be able to identify employees under review by virtue of their positions or posts" and instructed reviewers not to "reveal information about an employee not included in the MSI nomination" form to other reviewers. *Id.* at 9.[2]

---

[2] The court agrees with the defendants, and Macutkiewicz does not appear to contest, that it may properly consider the Department's policy at the motion-to-dismiss stage because the complaint repeatedly refers to that policy and the policy is "integral to" Macutkiewicz's claims. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (recognizing the court may consider the facts alleged in the complaint and documents attached to or incorporated by reference in the complaint); ECF No. 35 ¶¶ 1, 20, 59–61, 63, 65–66, 70–71 (referencing the "written policy" and specifically identifying it as "precepts," a word used in the title of the Department's policy).

Macutkiewicz did not receive the MSI award or get promoted in 2020, while some of his Afghanistan colleagues got both. ECF No. 35 ¶ 23. Macutkiewicz later learned his nomination was disqualified because his supervisor's form "contained gendered pronouns (he, his) identifying his gender/sex." *Id.* ¶ 25. According to the complaint, Macutkiewicz's nomination was "returned to his Bureau for resubmission" but never resubmitted. *Id.* ¶ 30 (quotation marks omitted). In addition to missing out on a salary increase and promotion, Macutkiewicz's disqualification for the award caused him physical and emotional trauma, including PTSD, depression, and hospitalization for mental health treatment. *Id.* ¶¶ 28–29.

In early 2022, Macutkiewicz filed a grievance with the State Department reporting the "mishandling" of his nomination and that Department employees "falsely claimed he was 'not nominated,' his nomination was 'returned,' etc." *Id.* ¶ 31. Macutkiewicz also filed a formal Equal Employment Opportunity ("EEO") charge claiming that the disqualification of his MSI award discriminated against him based on sex. *Id.* ¶¶ 32–33. The Department dismissed the EEO charge, saying it would be decided "as part of his still pending agency level grievance." *Id.* ¶ 37.

In early 2023, the State Department denied Macutkiewicz's agency grievance. *Id.* ¶¶ 40, 42. Macutkiewicz appealed that decision to the Foreign Service Grievance Board. During that process, he obtained part of the EEO investigative report, which said a human resources analyst made "an official written statement to a federal agent on duty clearly confirming the fact that Mr. Macutkiewicz's sex was a factor considered in the disqualification of his 2020 MSI nomination." *Id.* ¶ 43(A). Macutkiewicz's supervisor, the person who had filled out the nomination form "using gendered pronouns," also told Macutkiewicz that "sex was a factor considered in the disqualification." *Id.* ¶ 43(B). According to Macutkiewicz, a human resources director said his "MSI nomination was disqualified because it 'did not meet the criteria, as it contained several

examples of gender markers (he, his) in the nomination narrative.'" *Id.* ¶ 43(C). Macutkiewicz also learned that the State Department did not consider him for other types of recognition after disqualifying him, even though there is general guidance to consider unsuccessful nominees for other types of recognition. *Id.* ¶ 43(G).

In late 2024, the grievance appeal board denied Macutkiewicz's gender/sex discrimination charge but found the State Department had "mishandled" Macutkiewicz's 2020 MSI nomination and recommended that "Macutkiewicz be provided with a retroactive 2020 MSI award." *Id.* ¶¶ 44–45. The Department has not acted on that recommendation. *Id.* ¶ 44.

Macutkiewicz filed this suit asserting that the State Department's anonymization policy for MSI nominations violates the First Amendment and that the Secretary discriminated against him based on sex by disqualifying his nomination. *See* ECF No. 1-1 at 12–13. Four months after Macutkiewicz filed suit, the Department put him on administrative leave without pay, saying "the action was taken to promote the efficiency of the [Foreign] Service." *See* ECF No. 35 ¶ 46 (quotation marks omitted). Shortly after that, Macutkiewicz learned that his name had been placed on the Department's reduction-in-force list, and, three months later, the Department indefinitely suspended Macutkiewicz without pay "based on [Macutkiewicz]'s inactive security clearance" and "to promote the efficiency of the [Foreign] Service." *Id.* ¶¶ 48, 53. In late 2025, the Department fired Macutkiewicz "for cause 'to promote the efficiency of the [Foreign] Service.'" *Id.* ¶ 56 (quoting 22 U.S.C. § 4010). The separation notice said this "was a disciplinary action based on events that occurred" more than five years earlier, including the lapse of Macutkiewicz's security clearance. *Id.* ¶¶ 56, 84. Macutkiewicz alleges that although the Department said these actions were not disciplinary and it is true that his security clearance was not active, his clearance had

been inactive for several years and "the timing and surrounding circumstances" indicate the actions were related to his suit. *Id.* ¶¶ 47, 54.

Macutkiewicz's operative complaint asserts that the State Department's anonymization policy for MSI nominations violates free speech under the First Amendment (count one); that disqualifying his MSI nomination discriminated against him based on sex in violation of Title VII of the Civil Rights Act of 1964 and the D.C. Human Rights Act ("DCHRA") (counts two and three); that various State Department employees conspired to violate his due process rights (count four); and that the Department's decisions to put him on the reduction-in-force list, suspend him, fire him with cause, and thereby deny his access to files is unlawful First Amendment retaliation (count five). The defendants move to dismiss, arguing Macutkiewicz has failed to state any claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 36.

## II. Discussion

To survive dismissal for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court "must take all the factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In cases like this involving an unrepresented, or "pro se," litigant, the court is careful to give extra leeway. The court evaluates the complaint "in light of all filings, including filings responsive to a motion to dismiss." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (quotation marks omitted). Of course, an unrepresented plaintiff still "must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Jones v. Horne*, 634 F.3d 588,

596 (D.C. Cir. 2011) (quotation marks omitted). Although "detailed factual allegations" are not necessary, the plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### A. Macutkiewicz Does Not Plausibly Allege That The Policy Of Anonymizing Award Nominations Violates The First Amendment

Macutkiewicz's first count asserts that the State Department's "policy prohibiting the use of gendered pronouns in federal employee award nominations" is a "content- and viewpoint-based restriction[] on protected speech" that violates the First Amendment. ECF No. 35 ¶¶ 59–60. In particular, he alleges that disqualifying his MSI award nomination "solely because it included male pronouns" is a means of "punishing expression related to [Macutkiewicz's] sex and limiting lawful workplace speech." *Id.* ¶ 59. The Department argues Macutkiewicz does not state a First Amendment claim because the anonymization policy did not restrain his speech in any way, and the court agrees.[3]

Public employees do not "relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983) (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968)). When a public employee's First Amendment right to speak as a citizen addressing matters of public concern is

---

[3] The parties do not address standing. The court still considers it and concludes Macutkiewicz plausibly alleges standing to assert a First Amendment challenge even though his supervisor filled out the MSI nomination form. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (explaining that standing doctrine requires "plaintiffs to allege . . . a personal stake in the outcome of the controversy" (formatting modified)). Macutkiewicz plausibly alleges concrete injury from being disqualified, costing him a salary increase and promotion, and that injury is fairly traceable to the anonymization policy, which caused him to be disqualified because his supervisor used gendered pronouns. *See City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The injury is also redressable, including through damages for economic loss and for pain and suffering. ECF No. 35 ¶¶ 26, 60; *Clapper*, 568 U.S. at 409.

threatened, courts are then tasked with striking the appropriate "balance between the interests of the employee . . . and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (alterations omitted) (quoting *Pickering*, 391 U.S. at 568). But "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146. Here, there is no basis to conclude that the speech at issue—using gendered pronouns on an internal employee nomination form—is "addressing matters of public concern," and the court therefore need not get into the second step of balancing interests. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. Here, nothing in Macutkiewicz's pleadings suggests that using gendered pronouns on the award nomination form "fall[s] under the rubric of matters of public concern." *Id.* at 148 (quotation marks omitted). There is no allegation, for instance, that the State Department has restricted speech intended to evaluate or critique the performance of its officials or policies, to inform the public that the agency "was not discharging its governmental responsibilities," or "to bring to light actual or potential wrongdoing or breach of public trust" by the Department. *See id.* Indeed, there is no allegation that the anonymization policy has restricted Macutkiewicz (or any other employees') ability to raise concerns of any type with anyone—inside or outside the State Department. The speech at issue here, using gendered pronouns as part of an internal nomination process, "if released to the public, would convey no information at all"—indeed, not even that "a single employee is upset with the status quo." *Id.* The court acknowledges Macutkiewicz may be

frustrated that his supervisor's failure to comply with the anonymization policy interfered with his own promotion or award, but that is a matter "of personal interest" and it does not make this court "the appropriate forum in which to review the wisdom" of the policy. *Id.* at 147.[4]

**B. Macutkiewicz Does Not Plausibly Allege A Sex Discrimination Claim**

Macutkiewicz next alleges the Secretary of State disqualified his MSI award nomination based on sex in violation of Title VII (count two) or, in the alternative, the DCHRA (count three). ECF No. 35 ¶¶ 62–71; *see* 42 U.S.C. § 2000e-2(a)(1); D.C. Code § 2-1402.11(a)(1)(A).[5]

As the Secretary points out, Macutkiewicz's D.C. law claim is preempted by Title VII, which "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *see Marcus v. Yellen*, No. 09-cv-1686, 2022 WL 3910568, at *1 n.1 (D.D.C. Aug. 31, 2022) (collecting cases dismissing DCHRA claims as preempted by Title VII). Macutkiewicz appears to acknowledge the same. *See* ECF No. 35 ¶ 71 (acknowledging "that Title VII may preempt certain state or local remedies for federal employees"). The court therefore dismisses count three.

---

[4] Even assuming the anonymization policy were subject to heightened First Amendment scrutiny, the court would be required to dismiss Macutkiewicz's claim. The anonymization policy restricts the content (but not viewpoint) of what can be included in MSI nomination forms and would have to be supported by "a compelling interest" and be "narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015). Here, the government has identified the compelling interest to evaluate nominees "solely on merit with absolute fairness and justice" and without discrimination. ECF No. 36-1 at 2. The restrictions—using employee ID numbers and gender-neutral pronouns—are no more restrictive than necessary to achieve that interest.

[5] Although the complaint asserts the Title VII claim against the State Department, *see* ECF No. 35 at 15, Title VII provides a cause of action against "the head of the [federal] department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); *see Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975). Construing Macutkiewicz's complaint liberally and given that the defendants do not seek to dismiss count two on this basis, the court understands Macutkiewicz's Title VII claim to be asserted against the Secretary, who is also a defendant in this lawsuit.

As to count two, a Title VII claim requires a plaintiff to plausibly allege "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The Secretary does not appear to contest that Macutkiewicz has alleged adverse employment action, *see* ECF No. 36 at 12–13, and instead challenges the second element: that Macutkiewicz does not plausibly allege facts that "give rise to an inference" that the defendants took any adverse employment actions "because of" his sex. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 305, 309 (2025). The court agrees Macutkiewicz has not done so.

Macutkiewicz does not plausibly allege the Secretary disqualified his nomination because Macutkiewicz is a man. He argues otherwise by pointing to allegations in the complaint that "sex was a factor considered in the disqualification of his MSI nomination," based on statements made by his supervisor and a human resources employee. ECF No. 37 at 12 (citing ECF No. 35 ¶¶ 36, 43, 64). But even drawing all reasonable inferences in Macutkiewicz's favor, the only specific fact alleged to support the notion that "sex was a factor" is that his supervisor used gendered pronouns in violation of the Department's anonymization policy. The characterization that "sex was a factor" is therefore just a creative way to plead that the policy against gendered pronouns caused his disqualification. But application of the policy against gendered pronouns to Macutkiewicz's nomination does not show the Secretary discriminated against him "because of" his status as a man—the policy would equally disqualify any woman whose supervisor does not use gender neutral pronouns. *See Bostock v. Clayton County*, 590 U.S. 644, 656–60 (2020) (explaining Title VII's but-for causation standard "directs us to change one thing at a time and see if the outcome changes").

Nor does Macutkiewicz plausibly allege that the reason given for disqualifying him—his supervisor's use of gendered pronouns in violation of the policy—was pretextual. *See Ames*, 605 U.S. at 309 (explaining plaintiffs may "show that the stated justification was in fact pretext for discrimination" either by showing a discriminatory reason "more likely motivated the employer" or "by showing that the employer's proffered explanation is unworthy of credence" (quotation marks omitted)). Many of Macutkiewicz's allegations reiterate that this was the basis for his disqualification. *See, e.g.,* ECF No. 35 ¶¶ 1, 20, 25, 30, 43, 63. And although Macutkiewicz alleges some discrepancies in the information he received about what happened with his nomination, those discrepancies go to administrative characterizations, such as whether his application was disqualified or was returned for resubmission and never resubmitted. There is no inconsistency that the reason for disqualifying or returning his nomination was because the supervisor had used "gender markers" when the policy required anonymization. ECF No. 35 ¶¶ 25, 43; *see* ECF No. 37 at 12–13 (arguing Macutkiewicz was given "three different and incompatible explanations" for what happened to his nomination but not contesting that the reason something happened was due to the nomination's use of "gender markers"); *see also* ECF No. 36-1 at 2 (anonymization policy requiring that MSI nominations be "written in gender-neutral language").

Similarly, although Macutkiewicz asserts he would have been treated "more favorably" if he were a woman, ECF No. 35 ¶¶ 35, 69; ECF No. 37 at 14, he does not allege that any women received MSI nominations after their supervisor used gendered pronouns in their nomination form. ECF No. 35 ¶ 68 (alleging only that Macutkiewicz "is not aware of any female nominee who was disqualified for the use of gendered pronouns"); *see Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008) (explaining plaintiffs may show pretext for discrimination by "suggesting that the employer treated other employees of a different race, color, religion, sex, or

national origin more favorably in the same factual circumstances"); *see also Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530–31 (D.C. Cir. 2025) ("[I]t cannot be enough to simply allege that the plaintiff was treated differently from a similarly situated comparator, without additional allegations showing the comparators are in fact similarly situated in some meaningful respect." (quotation marks omitted)). Macutkiewicz does allege that "another male employee, who was nominated for the MSI by the same supervisor in 2020, . . . was similarly disqualified for the use of gendered pronouns" as well as a general proposition that "Foreign Service women were nominated for and awarded MSIs at a proportionally higher rate than men." ECF No. 35 ¶¶ 68–69. But neither allegation supports an inference that the anonymization policy was applied differently to women who were similarly situated to Macutkiewicz. *See Burley v. Nat'l Pass. Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (explaining that "comparator evidence" requires other employees to be "similarly situated" to the plaintiff, meaning "all of the relevant aspects of his employment situation were nearly identical to those of the other employee" (quotation marks omitted)).[6]

Because Macutkiewicz's has not plausibly alleged his MSI nomination was disqualified because of his sex, he has not plausibly alleged Title VII discrimination.

**C. Macutkiewicz Cannot Proceed Under *Bivens***

Macutkiewicz's fourth count asserts a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), that six State Department employees conspired to violate his Fifth Amendment right to due process by disqualifying his MSI nomination,

[6] Macutkiewicz alleges the reason he "is not aware of any female nominee who was disqualified for the use of gendered pronouns" is that the State Department "refused to produce copies of approved nominations during discovery, which would have enabled such a comparison." ECF No. 35 ¶ 68. Even accepting that as true, the question before the court is whether Macutkiewicz has plausibly alleged that he would have been treated more favorably as a woman: He has not.

"falsifying official records, obstructing [his] access to the EEO process, and coordinating actions designed to prevent [him] from receiving a fair review or remedy." ECF No. 35 ¶¶ 72–74. The court concludes that binding precedent forecloses Macutkiewicz's claim. The Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). Here, Macutkiewicz's claim that State Department employees violated his Fifth Amendment due process rights by interfering with his nomination and related process presents "a new *Bivens* context," and the court cannot conclude that "special factors" warrant allowing Macutkiewicz to proceed under a new cause of action. *Id.* at 496–98.

**D. Macutkiewicz Has Not Plausibly Alleged A Retaliation Claim**

Finally, Macutkiewicz's fifth count alleges that the State Department retaliated against him for filing this lawsuit and noticing his intent to amend his complaint by putting him on the reduction-in-force list, suspending him without pay, separating him for cause, and denying him access to files. *See* ECF No. 35 ¶¶ 76–90. Macutkiewicz asserts the retaliation claim under the First Amendment, *see id.* at 19; ECF No. 37 at 18, while the Department responds that the claim should be considered as a Title VII retaliation claim, *see* ECF No. 36 at 16. But either way, Macutkiewicz's retaliation claim requires plausibly alleging that retaliatory action was taken because of his protected activity. *See LeFande v. District of Columbia*, 841 F.3d 485, 493–94 (D.C. Cir. 2016) (recognizing that for First Amendment retaliation claims brought by public employees, the "protected speech must have been a substantial or motivating factor in prompting the retaliation"); *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (similar for First Amendment retaliation generally); *McGrath v. Clinton*, 666 F.3d 1377, 1380, 1383 (D.C. Cir. 2012) (explaining Title VII retaliation claims require that the employer took an adverse action against the employee "because" of the employee's protected activity). Here, Macutkiewicz's allegations that this litigation caused

the retaliatory actions that followed are based solely on conjecture given "[t]he timing and circumstances" and the fact that the individual defendants in this case work in the State Department's HR office. ECF No. 35 ¶¶ 83–84; *see* ECF No. 37 at 19. Macutkiewicz also does not plausibly allege that the Department's stated rationales—"to promote the efficiency of the [Foreign] Service" and that his security clearance had lapsed—were pretextual; indeed, he concedes the latter is true. ECF No. 35 ¶¶ 46, 53–54, 56, 80–81, 84 (quoting 22 U.S.C. § 4010); *see, e.g.*, *Nieves*, 587 U.S. at 399 (explaining a First Amendment retaliation claim fails "if the same decision would have been reached absent" the protected activity); *LeFande*, 841 F.3d at 494 (similar); *see also McGrath*, 666 F.3d at 1384–85 (explaining a legitimate, non-retaliatory reason for the adverse employment action can defeat a Title VII retaliation claim). The court therefore concludes Macutkiewicz has not stated a retaliation claim under the First Amendment or Title VII and dismisses count five.

## III. Conclusion

For these reasons, the court grants the defendants' motion to dismiss and dismisses this case without prejudice. A separate order accompanies this memorandum opinion.

AMIR H. ALI
United States District Judge

Date: October 29, 2026